UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AT&T CORP., <br><br>       Plaintiff, <br><br>  - against - <br><br> ATOS IT SOLUTIONS AND SERVICES, INC., <br><br>       Defendant. | Case No. 1:23-cv-01395-LJL <br><br> **STIPULATED ORDER GOVERNING ELECTRONIC DISCOVERY** |

   This Stipulated Order ("Order") Regarding the Production of Electronically Stored Information ("ESI") shall govern the Parties in the above-captioned case (the "Action").

**I.**  **INTRODUCTION**

   A.  Purpose

   The purpose of this Order is to streamline the efficient and proportional exchange of discovery in this Action and to eliminate the burdens associated with producing electronically stored information ("ESI") to the fullest extent possible for all Parties to the Action.

   B.  Supplementation and Modification

   To the extent any agreement in this Order results in any unforeseen hardship or undue burden on any Party contrary to its stated purpose above, the Parties will meet and confer to reach a reasonable, good faith compromise. This Order may be supplemented or amended by agreement between the Parties, or by the Court for good cause shown in such an event.

**II.**  **SCOPE AND LIMITATIONS ON PRODUCTION OF ESI**

   The Parties agree that they will engage in ongoing discussions regarding the appropriate scope and limitations of the discovery of ESI. The Parties will discuss possible options for ensuring an efficient and proportional discovery process, such as the possible use of search terms, culling methodologies or technology-assisted review, relevant date ranges, the

identification of agreed-upon custodians that may have potentially responsive information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

### III.     IDENTIFICATION OF POTENTIALLY RESPONSIVE DOCUMENTS

The Parties will discuss and, where possible, attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties in the most efficient, proportional, and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify potentially responsive ESI.

    A.     Sources

The Parties will meet and confer to disclose and discuss the custodial and non-custodial data sources likely to contain responsive and proportional information and identify potential witnesses. The Parties agree that they need not search for text messages or similar content from cellphones, but internal corporate messaging systems are within the scope of review to the extent they can be reasonably identified in a search of custodial data for agreed upon custodians. In other words, the Parties agree that they are not responsible for a search of messaging platforms outside of those found in the custodial data for the agreed upon custodians.

    B.     Identification of Custodians

Based on considerations of cost, proportionality, and relevance, the following individuals shall serve as the agreed upon custodians:

**AT&T**
Stephanie Hughes
Kirk Pouttu
Jim Rakoski
Rosemary Sofia

2

Robert Yuhas
Steve Sullivan
Chris Zpevak

**Atos**[1]
Denis Courtois
Diego Escorcia
Judith Fling
Doris Hendrick
Jayesh Maroo
Chris Wick
Chris Zueski

Each Party retains the right, upon reviewing the initial production of documents, conducting other investigation and discovery, and upon a good faith and reasonable showing of relevance and proportionality to (i) request that files from additional custodians likely to possess unique relevant information that is not duplicative of information produced from other custodians be searched, and (ii) meet and confer regarding such request.

C. Easily Segregable Documents

Documents or categories of documents that are easily identifiable and segregable such as files kept in a document depository earmarked for storage of documents related to the contract at issue in this Action shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review). Where potentially responsive ESI shall be searched through the use of search terms by agreement of the Parties, the Parties agree to follow the process identified below, and the Parties shall meet and confer regarding any proposed deviation.

---

[1] AT&T will seek judicial intervention to compel document productions from two additional Atos custodians identified in the Parties' Rule 26(a)(1)(A) Disclosures—Ashley Crandall and Brittany Self. Atos intends to oppose the application.

D.  Search Terms

The Parties have met and conferred and agreed-upon a set of search terms to be used by each Party to identify potentially relevant documents within the custodial data for the agreed-upon custodians for the period January 1, 2015 through February 17, 2023.

Atos shall use the following version of the search terms:

| **Atos' Terms** |
|---|
| (AT&T OR ATT) AND ("SDN OneNet BTB" OR "pricing schedule") |
| (AT&T OR ATT) w/10 ("Settlement Agreement" OR "Resale Addendum") |
| (AT&T OR ATT) OR Amend* OR exten* OR satisf* OR (OneNet OR "One Net" AND CSOA) w/15 ("Minimum Annual Revenue Commitments" OR MARC OR "minimum term revenue commitment" OR MTRC) |
| ((AT&T OR ATT) AND (pric* w/2 schedule)) w/10 (exten* OR CSOA OR amend* OR "76 months") |
| (AT&T OR ATT) AND (commitment* OR MARC) AND (shortfall OR $6.2* OR "$6.2 million" OR $6.2M OR $6,200,000.00 OR $18,500,000 OR $18.5M) |
| (AT&T OR ATT) AND ((2002 OR 2018 OR 2019 OR 2021 OR MSA OR "Master Agreement") w/5 Amendment) |
| ((AT&T OR ATT) AND invoic*) w/10 (refus* OR reject* OR declin*) |
| ("extension term" OR amendment*) w/10 (error* OR language OR mistak*) |
| ((AT&T OR ATT) AND "shortfall") w/10 (provision OR charg* OR penalt* OR error* OR mistake* OR correct* OR amend* OR waiv* OR cancel* OR invoice* OR fee* OR "Section 3.2" OR "Section 3.c" OR $455,237.00) |
| (Agreement OR MSA OR "pricing schedule") AND (120206 OR "Mini OneNet") |
| ((AT&T OR ATT) AND (MARC OR MTRC)) w/7 (eligible OR charg*) |
| (AT&T OR ATT) AND "Resale Addendum" |
| ((AT&T OR ATT) AND "settlement Agreement") w/7 (violat* OR breach* OR amend* OR extension) |
| (OneNet OR "One Net") AND ("Amended restated pricing schedule" OR "shortfall charge provision" OR MTRC OR MARC) |
| (Incentiv* OR MARC OR release) AND ("65-77" OR "65-76" OR "29-40") |
| (Amended OR "Pricing Schedule" OR 2018 OR 2019 OR "OneNet BTB") AND (68511 OR 181211 OR "76 months") |
| "mini OneNet" |
| (Judy.fling@atos.net OR Fling OR Ramirez OR hugo.ramirez@atos.net) w/10 (Shortfall OR "Section 3.2" OR correct* OR "mini OneNet") |
| "thru month 40" |

AT&T shall use the following version of the search terms:

| **AT&T's Terms** |
|---|
| Atos AND ("SDN OneNet BTB" OR "pricing schedule") |
| Atos w/10 ("Settlement Agreement" OR "Resale Addendum") |
| Atos OR Amend* OR exten* OR satisf* OR (OneNet OR "One Net" AND CSOA) w/15 ("Minimum Annual Revenue Commitments" OR MARC OR "minimum term revenue commitment" OR MTRC) |
| (Atos and (pric* w/2 schedule)) w/10 (exten* OR CSOA OR amend* OR "76 months") |
| Atos AND (commitment* OR MARC) AND (shortfall OR $6.2* OR "$6.2 million" OR $6.2M OR $6,200,000.00 OR $18,500,000 OR $18.5M) |
| Atos AND ((2002 OR 2018 OR 2019 OR 2021 OR MSA OR "Master Agreement") w/5 Amendment) |
| (Atos AND invoic*) w/10 (refus* OR reject* OR declin*) |
| ("extension term" OR amendment*) w/10 (error* OR language OR mistak*) |
| (Atos AND "shortfall") w/10 (provision OR charg* OR penalt* OR error* OR mistake* OR correct* OR amend* OR waiv* OR cancel* OR invoice* OR fee* OR "Section 3.2" OR "Section 3.c" OR $455,237.00) |
| (Agreement OR MSA OR "pricing schedule") AND (120206 OR "Mini OneNet") |
| (Atos AND (MARC OR MTRC)) w/7 (eligible OR charg*) |
| Atos AND "Resale Addendum" |
| (Atos AND "settlement Agreement") w/7 (violat* OR breach* OR amend* OR extension) |
| Atos AND ("Amended restated pricing schedule" OR "shortfall charge provision" OR MTRC OR MARC) |
| (Incentiv* OR MARC OR release) AND ("65-77" OR "65-76" OR "29-40") |
| (Amended OR "Pricing Schedule" OR 2018 OR 2019 OR "OneNet BTB") AND (68511 OR 181211 OR "76 months") |
| "mini OneNet" |
| (Judy.fling@atos.net OR Fling OR Ramirez OR hugo.ramirez@atos.net) w/10 (Shortfall OR "Section 3.2" OR correct* OR "mini OneNet") |
| "thru month 40" |

The Parties may make additional modifications to either the search terms or the relevant period by mutual agreement in writing. If disputes nevertheless exist, the Parties will address their dispute to the Court in accordance with the Court's Individual Practices in Civil Cases.

      E.      <u>Technology-Assisted-Review</u>

No Party shall use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies.  For the avoidance of any doubt, a Producing Party is at liberty to use any methodology and tool for the purpose of prioritization and/or expediting the review, so long as no documents are removed from attorney review or production based on such methodology.

**IV.**      <u>**CONFIDENTIALITY, PRIVACY, AND PRIVILEGED INFORMATION**</u>

      A.      <u>Confidentiality</u>

The Stipulated Protective Order, (ECF No. 50) entered in the Action, will govern the treatment of information warranting confidential treatment.  Nothing contained herein shall contradict the Parties' rights and obligations with respect to the Stipulated Protective Order.

      B.      <u>Personally Identifiable Information ("PII")</u>

The Parties will meet and confer regarding any additional measures necessary to protect PII (including data covered by the GDPR) in the event any Producing Party makes a request for such additional protections.

      C.      <u>Privilege Non-Waiver and Privilege Logs</u>

The Rule 502(d) Order, (ECF No. 48) entered in the Action, will govern the non-waiver of applicable privileges for discovery materials.

Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the Producing Party will produce privilege logs.  Privilege logs shall be produced within 30 days of each production by the Party.  To mitigate the burden associated with privilege logs, the Parties agree to produce "metadata only" logs in the first instance, subject to the following requirements:

Privilege logs will include the privilege claimed, and designated objective metadata fields to the extent they contain information, and the information is not privileged or protected. Designated objective metadata fields include: Author, From, To, CC, BCC, Date, Email Subject, File Name, and File Extension. Legal personnel shall be identified as such by adding an asterisk before or after their names in the privilege log, or disclosing the relevant attorney(s) if not otherwise evident.

A Party shall only be required to include on the privilege log the most inclusive email in a chain with the same participants and discussing the same subject matter. Lesser included emails need not be separately logged provided they meet these criteria. If the participants or subject matter changes in the course of the chain, a new entry shall be required on the privilege log.

Redacted documents need not be logged, provided the reason for the redaction appears on the redaction label and the unredacted portion of the document contains content that allows the receiving Party to assess the claim of privilege.

Privileged or Work Product protected communications that post-date the filing of this Action need not be logged.

Communications exclusively between a Party and its outside counsel, or by an agent of outside counsel, regarding this Action need not be logged.

Work product created by outside counsel, or at the direction of outside counsel regarding this Action need not be logged.

Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

If any Party asserts a reasonable need for additional information for a reasonable and limited number of particular document(s) on the log or redaction(s) in order to fairly assess the claim of privilege or immunity, the producing Party shall provide a privilege log entry for each such document or redaction that is fully compliant with the requirements of Federal Rule 26(b)(5) and Local Rule 26.2.

V.      **PRODUCTION FORMAT – ESI**

   A.      Format

The Parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, source code, audio and video files, which shall be produced in native format. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. However, the Parties are under no obligation to produce color copies where the use of color is not meaningful or enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of e-mail messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned and should

be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either Party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

      B.     <u>De-Duplication</u>

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Copies that have highlighting or notes attached shall not be removed from the documents to be produced. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The Parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. De-duplication will be done across the entire collection (global de-duplication) and the ALLCUSTODIAN field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production. The Parties reserve the right to use email threading to reduce the overall amount of ESI and documents produced and use email thread suppression to avoid the review and production of information contained within an existing email thread in another document being reviewed and produced.

C. <u>Searchable Format</u>

The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. To that end, the Parties will discuss and identify potentially relevant ESI that would not be amenable to the proposed technical specifications. The Parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

D. <u>Metadata</u>

To the extent that any of the following Metadata fields associated with all applicable Documents are available, the Producing Party will produce those Metadata fields to the Requesting Party:

| Field | Description |
| --- | --- |
| Production Beginning Bates Number | The Bates label of the first page of the document. |
| Production Ending Bates Number | The Bates label of the last page of the document. |
| Production Beginning Attachment | The Bates label of the first page of a family of Documents (e.g., email and attachment). |
| Production Ending Attachment | The Bates label of the last page of a family of Documents (e.g., email and attachment). |
| Attachment Count | The number of attachments to an email |
| File Name | The filename of an attachment or stand-alone e-file. |
| Original File Path | Path where original Native Document was stored |
| Custodian | The Custodian(s) of the document. |
| All Custodians | List of Custodians in possession of the document in the event that global deduplication was used during processing. *See* Section IV.C, below. |
| Page Count | The number of pages of the document. |
| File Extension | The original filename extension suffix (e.g., .doc,.pps., .jpeg, .txt, .xls). |
| Email Subject | The subject of an email. |

| Field | Description |
| --- | --- |
| Date Sent | For email, the sent date of the message. |
| Time Sent | For email, the sent time of the message. |
| Date Received | For email, the receive date of the message. |
| Time Received | For email, the receive time of the message. |
| Date Created | For e-files or attachments, the document's creation date or operating system creation date. |
| Time Created | For e-files or attachments, the document's creation time or operating system creation time. |
| Date Modified | For e-files or attachments, document's last modified date or operating system last modified date. |
| Time Modified | For e-files or attachments, the document's last modified time or operating system last modified time. |
| Author | The author of a stand-alone e-file or attachment. |
| From | The sender of an email message |
| To | The recipients of an email message, in a semicolon delimited multi-value list. |
| CC | The copy of an email message, in a semicolon delimited multi-value list. |
| BCC | The blind copy of an email message, in a semi-colon delimited, multi-value list. |
| MD5 | The calculated MD5 hash value of the document |
| Conversation Index | Email thread identification |
| File Size (bytes) | Size of Native File Document/email in bytes |
| Processing Time Zone | The time zone in which the Documents were standardized during processing |
| Relative Path to Native File | The file path to the location of the Native File if produced natively. |
| Relative Path to Text File | The file path to the location of the extracted text or OCR text file |
| Confidentiality Designation | The confidentiality designation, if any, for the document pursuant to any protective order in the case. |

The Producing Party is not obligated to produce any other forms of Metadata. However, if good cause exists, the Requesting Party may request the production of additional Metadata by providing (1) a list of the Bates numbers of Documents requested to be produced with additional Metadata; (2) a list of the types of Metadata sought; and (3) an explanation of the need for production of the requested Metadata. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause, but need not make such production until the Parties reach agreement regarding apportionment of any additional costs associated with the production of such additional Metadata.

E. Unitization

If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the Producing Party or shall be documented in a load file or otherwise electronically tracked.

F. Embedded Objects

Microsoft Excel (.xls) spreadsheets embedded in documents will be extracted as separate documents and treated like attachments to the document to the extent the spreadsheet is reasonably accessible and/or extractable. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a Producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachment. Nothing in this Paragraph shall be construed as requiring either Party to produce information not reasonably accessible or to recreate and/or repair embedded links that may no longer be functioning.

G.  Documents with Hyperlinks

The Parties agree that hyperlinks to other documents embedded in produced documents ("Hyperlinked Documents") are not attachments to such produced documents and need not be produced as a family members for such produced documents. Hyperlinked Documents need not be produced in the Action unless they are independently collected and identified as relevant pursuant to a reasonable search and the Parties' agreement on scope of discovery and agreed-upon search methodologies.

A Producing Party will consider in good faith any reasonable request to produce a Hyperlinked Document that is not independently produced but need not produce such Document unless it: (i) can be identified with certainty (including, but not limited to, whether the particular draft or version linked to the produced document is definitively known); (ii) exists and can be easily located; (iii) is non-privileged; and (iv) is relevant to the Action.

H.  Spreadsheets, Databases, and Other File Types

Microsoft Excel files, .csv files, and other similar spreadsheet files that are not easily converted to image format shall be produced in Native Format. To the extent a response to discovery requires the production of electronic information stored in a database, the Parties will meet and confer regarding methods of production of the data that will allow the Requesting Party to use and search the data in a meaningful way and exchange information for this purpose, which may include information concerning the (a) database schema, and (b) database schema standardized reports and queries.

I.  Zero-Byte Files

The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the Requesting Party, in good faith, believes that a

zero-byte file was withheld from production and contains information responsive to a request for production, the Requesting Party may request that the producing Party produce the zero-byte file. The Requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

J.  Attachments

The Parties agree that non-responsive parent documents must be produced if they contain a responsive attachment and are not withheld as privileged. Non-responsive attachments to responsive parent emails need not be produced. A Bates numbered placeholder will be provided for any document withheld pursuant to this Section and shall state that a non-responsive attachment has been withheld from production.

K.  Compressed File Types

Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

L.  Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

M.  Redactions

If documents that the Parties have agreed to produce in native format need to be redacted, a party may redact natives by inserting "redacted" using a native redaction tool where the material is redacted. If for some reason this is not feasible, the Parties will meet and confer

regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Extracted text will not be provided for documents that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text.

       SO STIPULATED AND AGREED.

Dated: March 13, 2024

| | |
|---|---|
| /s/ *Edward J. Jacobs* | /s/ *Andrew J. Peck* |
| Jonathan D. Pressment | Leon Medzhibovsky |
| Christos G. Papapetrou | Andrew J. Peck |
| Edward J. Jacobs | Steven M. Rosato |
| Kayley B. Sullivan | |
| | |
| **BAKER & HOSTETLER LLP** | **DLA PIPER LLP (US)** |
| 45 Rockefeller Plaza, 14th Fl. | 1251 Avenue of the Americas, 27th Fl. |
| New York, New York 10111 | New York, NY 10020-1104 |
| Telephone: (212) 589-4200 | Tel.: (212) 335-4500 |
| Facsimile: (212) 589-4201 | Fax: (212) 335-4501 |
| | |
| *Attorneys for Plaintiff AT&T Corp.* | Cameron A. Fine (*pro hac vice*) |
| | 2525 East Camelback Road, Suite 100 |
| | Phoenix, AZ 85016-4232 |
| | Tel.: (480) 606-5132 |
| | Fax: (480) 606-5533 |
| | |
| | *Attorneys for Defendant Atos IT Solutions and Services, Inc.* |

       SO ORDERED.

Dated: March 13, 2024
New York, New York

                                                LEWIS J. LIMAN
                                                United States District Judge