

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
www.dlapiper.com

Cameron A. Fine
cameron.fine@us.dlapiper.com
T   480.606.5132
F   480.606.5533

March 3, 2025
<u>By ECF</u>

Re:     *AT&T Enterprises, LLC v. Atos IT Solutions and Services, Inc.* Case No. 01:23-cv-01395

Dear Judge Liman:

Pursuant to Rule 1(C) of Your Honor's Individual Practices and Fed. R. Civ. P. 37(a), Defendant Atos respectfully requests that Your Honor compel AT&T to supplement its Second Amended Initial Disclosures ("Second Amended Disclosures," Exh. A) with documents and computational analysis sufficient to support its claim for breach of the implied covenant of good faith and fair dealing damages under Federal Rules of Civil Procedure 26(a)(1)(A)(iii) and (e)(1)(A). The parties have conferred on these issues without success.

**I.      Rule 26 Requires a Computation, Some Analysis, and Supporting Documents**

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires a party to provide "a computation of each category of damages claimed by the disclosing party" and to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based[.]" At minimum, the Rule requires an "estimate of damages and *some* analysis," *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, at *5 (S.D.N.Y. Mar. 7, 2014) (citation omitted), along with evidentiary support, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295-96 (2d Cir. 2006) ("The Advisory Committee Notes to Rule 26(a)(1)(c) accompanying its promulgation make clear that the rule imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34.") (internal quotations omitted). A party who has made a disclosure under Rule 26(a)..."must supplement or correct its disclosure...in a timely manner." Fed. R. Civ. P. 26(e)(1)(A).

**II.     AT&T has Refused to Comply with its Rule 26 Disclosure Obligations**

In its August 22, 2024 amended complaint, AT&T alleged for the first time that "as a result of Atos's violation of the implied covenant and fair dealing, AT&T has been damaged in an amount to be determined at trial but in no event less than that *total amount of discounts provided* to Atos under the 2021 Amendment as well as, to the extent provided by law, the amount of the Shortfall Invoice and the MTRC Shortfall, which amounts are believed to be in excess of $7 million." ECF No. 94 ¶ 229.

On September 6, 2024, Atos requested that AT&T supplement its Initial Disclosures to provide a computation of these damages and documents supporting that computation because <u>only AT&T knows</u> the *total amount of discounts it provided* to Atos. On October 9, 2024, AT&T provided amended disclosures (Exh. B) that did not comply with Rule 26(a)(1)(A)(iii). AT&T further supplemented its disclosures on February 20, 2025 (Exh. A), but the supplement did not cure the deficiencies in AT&T's damages computation. AT&T's Second Amended Disclosures state that the alleged damage for the breach of the implied covenant is "comprised of: (1) the amount of the **discounts afforded** to Atos under the 2021 Amendment…; and (2) the **value of business that Atos intentionally diverted** away from AT&T with the intention of capitalizing on the Scrivener's Error to claim it was not obligated to satisfy the 2021 Amendment's MARC." Exh. A at 10. AT&T estimated that these damages totaled $7,150,800. AT&T arrived at this figure by multiplying "$595,000 in discounts" purportedly provided to Atos in January 2021 (a month picked at random for a "period just prior" to the 2021 Amendment's



term (the "Extension Period")) by 12 as a guestimate for the 12 months of services provided during the Extension Period, February 2021 to February 2022. *Id.* at 10-11[1]

Regarding (1) "**discounts afforded**": a hypothetical projection based on a random month *before* the Extension Period commenced has no relevance to the damages claimed. AT&T provided a variety of network services[2] and Atos paid for those services based on specified pricing ("Pricing Schedule")[3] subject to certain discounts.[4] The many individual network services are priced and discounted individually by service type.[5] To bill Atos each month of the Extension Period, AT&T tracks the usage for each of Atos's customers. To calculate "the amount of discounts [actually] afforded to Atos during the 2021 Amendment" AT&T must identify for each month of the Extension Period the:

1. services actually used by Atos's customer;
2. *amount billed* to Atos for the use of those service;
3. amount AT&T claims it *could have charged* for those services if the 2021 Amendment had not been executed; and
4. difference between the *amount billed* and the amount that AT&T claims it *could have charged* absent the 2021 Amendment.

Only AT&T has this information. In a communication from AT&T to Atos, AT&T threatened Atos with removal of its custom list rates, which was a second level of discounts that are separate from the Pricing Schedule discounts. *See* Exh. G. AT&T asserted that without a signed extension Atos would be off-contract and AT&T intended to take away this second level of discounts through removal of custom list rates reverting to AT&T's public rates in its Business Service Guide. *Id.* In that scenario, AT&T threatened that in January 2021 for *one* service provided to *one* customer (Disney) charges would increase by over 7,948% from $1,985 to $15,776,937. *Id.* Atos could not then, nor can it currently, compute the accuracy of that amount and investigate the claimed damages theory because only AT&T knows the network services actually used during the 12-month extension period, the amounts charged for each service based on the Pricing Schedule and discounts applied (including the custom list rates) as compared to the non-discounted rates (presumably some sort of standard rates charged by AT&T for service) that AT&T alleges it could have hypothetically charged during the Extension Period.

AT&T's refusal to provide this information on the grounds that it is the subject of expert testimony is entirely misguided. AT&T's alleged damages can be determined from simple math that only AT&T is capable of calculating. We know AT&T can perform that calculation because it did it based on forecasts while tracking

---

[1] AT&T's projection is also based on inaccurate assumptions because it uses figures from a one-month period (January 2021) unrelated to the extension period and excludes numerous contractual services used that month. *See* Exh. C (filtered and unfiltered versions of the summary page of the spreadsheet attached to Exh. H). Kirk Pouttu, who AT&T disclosed as having discoverable information regarding "the discounts there were afforded to Atos under the 2021 Amendment" could not explain why certain services were excluded from AT&T's summary of the discounts provided. (Exh. D, Pouttu Tr. 203:19-204:14.)

[2] The pricing schedule lists at least 35 different network services that AT&T provides to Atos customers, including: voice services (conferencing, toll-free, voiceport, mobile, etc.); data services (fiber, ethernet, VPN, etc.); and other services (security, consulting, contact center, etc.). *See* Exh. E (2019 Pricing Schedule at p. 5, Sec. 4.1).

[3] Id. at p. 10-32, Sec. 7.

[4] Id. at p. 5-7, Sec. 5.

[5] The OneNet Pricing Schedule at issue here was one of many pricing schedules amended at the same time in February 2018. To calculate its damages AT&T needs to establish that the service provided for which it is claiming damages is connected to the Second Restated Pricing Schedule, as amended by the 2021 Amendment, as opposed to another pricing schedule. *See* Exh. F (delivering the "Final Contract Package" with numerous attached pricing schedules and see Atos-ON0032551 listing the various pricing schedules and rates).



Hon. Lewis J. Liman
U.S. District Court, S.D.N.Y.
March 3, 2025
Page Three

and invoicing Atos and threatening increases. *See* Exh. H.  It is not opinion testimony, but factual information that is within AT&T's possession that was repeatedly and intentionally withheld from disclosure.

Regarding (2) the **value of business that Atos allegedly diverted** away from AT&T: AT&T tracked all of Atos's customers' usage of network services each month, which is evident from its email threatening fee increases of over 794,708% for a specific service provided to a specific Atos customer (Disney). Exh. G. AT&T is therefore capable of identifying any customers that it claims Atos allegedly diverted away from AT&T during the Extension Period and the value of any business that was diverted. But AT&T has failed to do even that. It has not named a single customer that it alleges was diverted, let alone provided a computation for the damages associated with the alleged diversion.

Atos requested documentary support from AT&T's business records and a proper analysis that shows AT&T's claimed damages on November 6, 2024. *See* Exh. I.  AT&T refuses to provide it. *See* Exh. J.  Atos also served an Interrogatory requesting that AT&T provide "a computation of each category of AT&T's alleged damages" and "identify by Bates number any documents produced in this action . . . on which the computation of each category of alleged damages is based" with respect to its claim for breach of the implied covenant of good faith and fair dealing. In response, AT&T referred Atos to its inadequate disclosures and the inaccurate projections depicted in Exhibit H.  *See* Exh. K.  Atos has exhausted all efforts to obtain an adequate Rule 26 disclosure.

### III.     AT&T Must Supplement Its Second Amended Disclosures

Rule 26 requires AT&T to provide Atos with information to calculate the damages claimed against it. *Pilitz v. Inc. Vill. Of Freeport*, 2020 WL 6945927, at *2 (E.D.N.Y. Nov. 25, 2020 ("[A] party cannot satisfy Rule 26(a) by 'merely setting forth the figure demanded' unaccompanied by any analysis; rather, '<u>the disclosures must be sufficiently specific that the opposing party has some basis to calculate the damages claimed against it.</u>'") (citation omitted) (emphasis added)); *Cosmopolitan Interior NY Corp. v. Dist. Council 9 Int'l Union of Painters & Allied Trades*, 2020 WL 3050732, at *2 (S.D.N.Y. June 8, 2020) (plaintiff's list of damages claimed for jobs, <u>without supporting calculations or references to financial records, deemed insufficient</u> under Rule 26(a)(1)(A)(iii)) (emphasis added).

To effectively calculate the damages claimed against it—"the amount of the **discounts afforded**" and "the **value of business that Atos intentionally diverted** away from AT&T"—AT&T must provide:

(1) a breakdown for each month of the Extension Period that identifies the information outlined in Section II, *supra.*
(2) a list of any customer that AT&T contends was diverted away from AT&T during the Extension Period along with a corresponding dollar amount for the purported value of the diverted business;
(3) documentary support, including, *inter alia*, invoices, tracking spreadsheets, documents identifying the network services provided, documents identifying the rates and discounts provided for those services, documents evidencing the undiscounted rates for the same services including both the Pricing Schedule discount as well as the custom list rate discount evidencing the service guide rate for those services, list of customers diverted, documents showing the amount of customer business diverted, and other documentary support for each step of the above computations.

Atos respectfully requests that the Court order AT&T to supplement its Second Amended Disclosures with the above listed information.

Respectfully submitted,

*s/ Cameron A. Fine*

Cameron A. Fine

cc: All Counsel of Record

> Motion denied.  Atos has failed to show a violation of Rule 26(a)(1)(A)(iii).  AT&T has provided its estimate of damages and an analysis and has produced documents supporting that analysis.  The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 135 and 136.
>
> SO ORDERED.
>
> *[signature]*
> LEWIS J. LIMAN
> United States District Judge
>
> March 6, 2025