UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AT&T ENTERPRISES, LLC, as successor-in-interest to AT&T CORP.,

                Plaintiff,

    - against -

ATOS IT SOLUTIONS AND
SERVICES, INC.,

                Defendant.

Case No. 1:23-cv-01395-LJL

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AT&T
ENTERPRISES, LLC'S MOTION FOR ITS ATTORNEYS' FEES AND COSTS**

**BAKER & HOSTETLER, LLP**

Jonathan D. Pressment
Christos G. Papapetrou
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212-589-4200
Facsimile:  212-589-4201
jpressment@bakerlaw.com
cpapapetrou@bakerlaw.com

*Attorneys for Plaintiff AT&T Enterprises, LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT BACKGROUND ...........................................................................................4

      A.      The Underlying Litigation ....................................................................4

      B.      The Summary Judgment Order..............................................................5

      C.      The Contracts Governing AT&T's Motion .............................................5

      D.      AT&T's Legal Fees and Costs.................................................................7

ARGUMENT ...................................................................................................................12

I.      AT&T IS CONTRACTUALLY ENTITLED TO RECOVER ITS COSTS AND
      REASONABLE ATTORNEYS' FEES INCURRED IN THIS ACTION. ........................12

II.     THE ATTORNEYS' FEES, COSTS, AND EXPENSES REQUESTED BY AT&T ARE
     REASONABLE....................................................................................................14

      A.      The Hourly Rates Requested are Reasonable, and Reflect the Experience,
               Ability, and Reputation of the Attorneys Used, and Fall Within the
               Customary Fees Charged. ....................................................................17

             1.      Baker's Rates were Reasonable in Light of its Attorneys' Strong
                        Reputation and Experience in Commercial Litigation Matters. ...............17

             2.      BakerHostetler's Rates are Competitive with Similarly Sized New York
                        Law Firms and Comparable to Rates Previously Deemed Reasonable by
                        Courts in This District When Awarding Attorneys' Fees..........................18

      B.      The Hours Spent by BakerHostetler Are Reasonable Under the Circumstances. .20

CONCLUSION.................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alessi Equipment, Inc. v. Am. Piledriving Equipment, Inc.*,
578 F. Supp. 3d 467 (S.D.N.Y. 2022) ..................................................................... 14

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
No. 20 Misc. 23, 2021 WL 1353756 (S.D.N.Y. Apr. 12, 2021) ............................... 19

*Adstra, LLC v. Kinesso, LLC*,
No. 24-cv-2639 (LJL), 2025 WL 1070034 (S.D.N.Y. Apr. 9, 2025)........................... 16, 18, 19

*ATT Corp. v. Publ'g Concepts L.P.*,
No. 08 Civ. 7658 (DC), 2010 WL 1191380 (S.D.N.Y. Mar. 29, 2010) ..................................... 13

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
No. 22-CV-7962 (RA) (RWL), 2025 WL 1183676 (S.D.N.Y. Apr. 4, 2025),
*R. & R. adopted*, 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025) ............................... 19

*F.H. Krear & Co. v. Nineteen Named Trs.*,
810 F.2d 1250 (2d Cir. 1987) .................................................................................. 13

*Fleming v. MaxMara USA, Inc.*,
No. 06-CV-6357 (CBA) (JMA), 2010 WL 1629705 (E.D.N.Y. Apr. 21, 2010) ...................... 21

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998) .................................................................................... 20

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 226 (2d Cir. 1987) .................................................................................... 18

*Keybanc Cap. Markets, Inc. v. Extreme Steel, Inc.*,
710 F. Supp. 3d 239 (S.D.N.Y. 2024) ..................................................................... 13

*Kim v. Superior Cafe Corp.*,
No. 21-cv-3620 (GBD) (RWL), 2021 WL 5315704 (S.D.N.Y. Oct. 7, 2021)........................ 20

*KLS Diversified Master Fund, L.P. v. McDevitt*,
532 F. Supp. 3d 126 (S.D.N.Y. 2021) ..................................................................... 13

*Lilly v. City of N.Y.*,
934 F.3d 222 (2d Cir. 2019) .................................................................................... 16

*Major League Baseball Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*,
No. 19 Civ. 8669 (MKV) (GWG), 2021 WL 56904 (S.D.N.Y. Jan. 7, 2021) ...................... 13

*Matsumura v. Benihana Nat'l Corp.*,
  No. 06 Civ. 7609 (NRB), 2014 WL 1553638 (S.D.N.Y. Apr. 17, 2014)................................. 13

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ...................................................................................... 18

*McGuire v. Russell Miller, Inc.*,
  1 F.3d 1306 (2d Cir. 1993) ......................................................................................... 13

*Mircal v. Flacks*,
  No. 1:25-cv-622-GHW, 2025 WL 3560376 (S.D.N.Y. Dec. 11, 2025)................................... 19

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
  67 F.3d 435 (2d Cir. 1995) ......................................................................................... 14

*OVES Enter., SRL v. NOWwith Ventures, Inc.*,
  No. 24-cv-03581 (LJL), 2024 WL 4635399 (S.D.N.Y. Oct. 31, 2024) ................................... 13

*Phyto Tech Corp. v. Givaudan SA*,
  No. 18-cv-6172 (JGK), 2023 WL 1437714 (S.D.N.Y. Jan. 31, 2023)..................................... 19

*Red Tree Invs., LLC v. Petroleos De Venezuela, S.A.*,
  Nos. 19-CV-02519, 19-CV-02523 (PKC) (SN),
  2022 WL 17834945 (S.D.N.Y. Nov. 29, 2022),
  *R. & R. adopted*, 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023)................................................ 19

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) ........................................................................................ 16

*Steele-Warrick v. Microgenics Corp.*,
  738 F. Supp. 3d 222 (E.D.N.Y. 2024)........................................................................... 14

*StoneX Grp., Inc. v. Shipman*,
  No. 23-CV-00613 (JGK) (VF), 2025 WL 1212165 (S.D.N.Y. Apr. 25, 2025) ........................ 19

*Tlacoapa v. Carregal*,
  386 F. Supp. 2d 362 (S.D.N.Y. 2005) ........................................................................... 20

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
  No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ........................................... 18

*Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*,
  No. 23-CV-603 (PGG) (RWL), 2023 WL 8591953 (S.D.N.Y. Oct. 16, 2023),
  *R. & R. adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) .............................................. 19

**Rules**

CPLR § 5004..........................................................................................................5, 7

Federal Rule of Civil Procedure 30 ...............................................................................8

Federal Rule of Civil Procedure 54(d).........................................................................1

Federal Rules of Civil Procedure 45 and 37(a).............................................................2

Pursuant to Federal Rule of Civil Procedure 54(d), Plaintiff AT&T Enterprises, LLC ("AT&T") submits this Memorandum of Law in support of its contractually-based motion to recover its reasonable attorneys' fees and costs expended in securing judgment against Defendant Atos IT Solutions and Services, Inc. ("Atos") as of April 22, 2026.

## PRELIMINARY STATEMENT[1]

After more than three years of protracted litigation with Atos, including: dispositive motions practice (including motions to dismiss and for summary judgment); a successful motion for leave to amend AT&T's Complaint; the production of tens of thousands of documents from upwards of two dozen custodians; twenty depositions conducted across multiple states; numerous letter motions and Court appearances; and over 350 exhibits submitted in connection with the Parties' cross-motions for summary judgment, AT&T ultimately prevailed in obtaining summary judgment on its reformation claim pursuant to the Court's April 22, 2026 Opinion and Order (ECF No. 241) (the "Summary Judgment Order") which totals 68 pages.

The Summary Judgment Order granted AT&T's motion and denied Atos' cross-motion for summary judgment and motion for sanctions. AT&T is contractually entitled to recover its reasonable attorney fees and costs incurred in pursuing the payment owed to it from Atos pursuant to Section 4.4 of a 2019 Addendum to the Parties' MSA (the "2019 Addendum"), which provides the General Terms and Conditions governing the Parties' relationship. Specifically, Section 4.4 of the 2019 Addendum provides that "[Atos] will reimburse AT&T for all costs associated with collecting undisputed overdue, delinquent or dishonored payments, including reasonable attorneys' fees." (Pressment Decl. Ex. C[2] (2019 Addendum) § 4.4).

---

[1]    Undefined capitalized terms have the meaning set forth in the Court's opinion and order granting AT&T's motion for summary judgment (ECF No. 241).

[2]    Exhibits cited in this memorandum are attached to the Declaration of Jonathan D. Pressment (the "Pressment Decl." or "Pressment Declaration") accompanying this motion.

Here, AT&T's entire purpose in bringing this action was to recover a delinquent payment—the balance owed for the 2021 Amendment's MARC. The fees and costs that AT&T seeks—which total $4,392,015.59—are reasonable given the duration, intensity and complexity of this litigation. Indeed, much of the fees and costs that AT&T incurred resulted from Atos' litigation tactics which needlessly increased the costs of this litigation. Among other things, Atos' tactics:

- required AT&T to proceed with motion practice to compel production of documents from witnesses identified in the Parties' Initial Disclosures (ECF Nos. 53 and 54);

- required AT&T to respond to a motion to dismiss based on demonstrably false claims that Atos intentionally negotiated for the provision AT&T sought to reform—which contained a clear drafting error (ECF Nos. 17-19, 26, 30-31, 33);

- required AT&T to file a motion for leave to amend to reinstitute its reformation claim, which the Court previously dismissed based on a theory that Atos subsequently failed to offer any evidence to support (ECF Nos. 66-69);

- required AT&T to file a motion to address Atos' improper withholding of certain documents under insupportable claims of privilege (ECF Nos. 87, 88 and 93);

- required numerous meet-and-confers over basic discovery obligations such as Atos' interrogatory responses (*see, e.g.,* ECF No. 53 at n. 3);

- required AT&T to file a motion pursuant to Federal Rules of Civil Procedure 45 and 37(a) to depose the key Atos witness in the case, Loek van Stekelenburg, in New York rather than in Amsterdam as Atos had insisted (and required AT&T to oppose Atos' cross-motion for a protective order) (ECF Nos. 114-121);

- necessitated AT&T's opposition to Atos' motion to compel AT&T to produce witnesses identified in response to Atos' 30(b)(6) Notice (each of whom was

deposed as a fact witness) for *multiple* 7-hour Rule 30(b)(6) depositions (ECF Nos. 122-29);

- necessitated AT&T's opposition to a baseless motion to compel AT&T to supplement its Second Amended Disclosures more than two years after the case was filed, which the Court denied (ECF Nos. 135-37, 143);

- required AT&T to travel to Detroit, Pittsburgh, Dallas, Washington D.C., and Houston to depose Atos' witnesses (despite the fact that the majority of AT&T's witnesses were produced for their depositions in New York) because Atos refused to produce any of its witnesses for depositions in New York (except for Mr. van Stekelenburg who was produced here pursuant to the Court's Order) (Declaration of Jonathan Pressment ("Pressment Decl." or "Pressment Declaration") ¶¶ 6.j, 6.l);

- necessitated AT&T's opposition to Atos' motion for sanctions, which the Court subsequently denied as part of the Summary Judgment Order based on a finding that Atos' arguments "lack[ed] merit" (ECF Nos. 139-42, 152-54); and

- necessitated AT&T's opposition to Atos' cross-motion for summary judgment based on arguments that the Court found were "entirely baseless" and/or "mischaracterize[d] matters" (ECF Nos. 170-78, 201-08, 225-27).

These are just a few examples of Atos' litigation tactics that greatly escalated the legal fees and costs of litigating this matter beyond what should have been required to litigate three relatively straightforward claims—especially where Atos possessed a litany of documents establishing that its own employees openly acknowledged that the provision on which Atos was relying to avoid its payment obligations was an "error," a "typo," a "mistake," and an "oversight."

AT&T strove to limit the expense of this litigation—most notably, by suggesting that the matter be resolved on summary judgment, prior to depositions, based on the documents produced

3

in discovery.  (Pressment Decl. ¶¶ 7-8).  Atos refused.  (*Id*. ¶ 8).  Instead, it proceeded with a "scorched earth" discovery strategy and extensive motion practice at every turn. (*Id*. ¶ 7.) Given its tactics, Atos should not be heard to complain regarding its liability for the costs and attorneys' fees that AT&T incurred pursuing its claims.

As set forth below, the total fees and costs that AT&T incurred over the three years of this litigation are reasonable and AT&T is entitled to recover them pursuant to the Parties' contract. Consequently, the Court should order Atos to pay the reasonable fees and costs incurred by AT&T in procuring a Judgment in this action, which total $4,392,015.59.

**RELEVANT BACKGROUND[3]**

**A.    The Underlying Litigation**

As this Court knows, the underlying dispute arose from Atos' efforts to capitalize on an obvious drafting error to escape its $6.2 million minimum annual revenue commitment ("MARC") to AT&T under a contractual amendment the Parties signed in 2021 (the "2021 Amendment"). Under the 2021 Amendment, Atos agreed to spend a minimum of $6.2 million with AT&T between March 2021 and February 2022.  There is no dispute that Atos fell millions short of doing so.  As a result, following expiration of the 2021 Amendment's term, AT&T invoiced Atos for the balance of the MARC owed—a total of $3,367,531.  However, Atos refused to pay it.

Instead, Atos sought to escape its liability for the shortfall based on a provision in the contract underlying the 2021 Amendment—the 2019 Restated Pricing Schedule—that Atos claimed allowed it to satisfy the 2021 Amendment's $6.2 million MARC (for March 2021 to February 2022) with money spent during an entirely different time period.  Yet, the provision on which Atos relied contains a clear drafting error that does not accurately reflect the Parties' agreement.  The provision was intended to require Atos to satisfy the 2021 Amendment's $6.2

---

[3]    The relevant factual background is more fully set forth in the Court's Summary Judgment Order as well as the attached Declaration of Jonathan D. Pressment who served as AT&T's lead counsel on the matter.

4

million MARC with money spent during the 2021 Amendment's term—*i.e.*, between March 2021 and February 2022.  When Atos refused to acknowledge the drafting error—and falsely claimed that the provision appeared as intended—AT&T was forced to file this action in February 2023.

**B.      The Summary Judgment Order**

On April 22, 2026, after more than three years of litigation, the Court recognized what AT&T had long argued—that the provision on which Atos was relying to avoid its payment obligations for the MARC shortfall owed contains a scrivener's error that does not accurately reflect the Parties' agreement.   Thus, the Court granted AT&T summary judgment on its reformation claim.  Based on the Court's Order, AT&T is entitled to the balance of the MARC owed ($3,367,531) plus interest at 9% per annum pursuant to New York law.  (ECF No. 241 at 17; CPLR § 5004).  The Clerk of the Court entered Judgement on April 23, 2026.  (ECF No. 242).

**C.      The Contracts Governing AT&T's Motion**

AT&T's request for its costs and reasonable attorneys' fees incurred in securing its Judgment is grounded in the Parties' contract. The Parties' relationship arises from an October 9, 2002 Master Agreement (No. 120206) (the "MSA") that originally established the general terms and conditions governing their relationship and contemplates that additional terms and services to be provided by AT&T would be set forth in subsequent service attachments—some known as Pricing Schedules—that would be considered part of the MSA. (Pressment Decl. Ex. A).

The MSA was amended and/or supplemented several times through various addendums and attachments the Parties signed between 2002 and 2019—all of which reference the MSA's "Reference No.": 120206.  (*See* ECF Nos. 171-8, 171-9, 203-2, 194-40).  The most recent Addendum to the MSA is the 2019 Addendum.  (Pressment Decl. Ex. C).  Section 1.1 of the 2019 Addendum establishes its applicability to the MSA and its Pricing Schedules as follows:

> **1.1 Overview of Documents.** This Addendum incorporates the terms of the Master Agreement [*i.e.*, the MSA] between AT&T and Customer referenced above [No.

5

120206] *and together with the General Terms and Conditions herein and the following additional documents (collectively, "Agreement") shall apply to all products and services AT&T provides Customer pursuant to this Agreement ("Services")* and shall continue in effect so long as Services are provided under this Agreement:

**(a)** Pricing Schedules. A "Pricing Schedule" means a pricing schedule (including related attachments) or other document that is attached to or is later executed by the parties and references this Agreement. A Pricing Schedule includes the Services, the pricing (including discounts and commitments, if applicable), the pricing schedule term ("Pricing Schedule Term") and other Service specific terms and conditions.[4]

*Id.* §§ 1.1-1.1(a) (emphasis added).

The 2019 Addendum contains a Priority of Documents provision that provides:

**1.2 Priority of Documents.** The order of priority of the documents that form this agreement is: the applicable Pricing Schedule; *the General Terms and Conditions* [set forth in 2019 Addendum]; the Master Agreement, the AUP; and Tariffs, Guidebooks, Service Guides, and Price Lists; provided that Tariffs will be first in priority in any jurisdiction where applicable law or regulation does not permit contract terms to take precedence over inconsistent Tariff terms.

*Id.* § 1.2.

Thus, the 2019 Addendum's *General Terms and Conditions*—set forth on pages three through eighteen of the 2019 Addendum—control over everything but the terms of an applicable Pricing Schedule (to the extent they conflict). Notably, the 2019 Addendum's terms specifically control over the terms of the MSA (*i.e.*, the Master Agreement).[5] Moreover, under Section 1.1 of the 2019 Addendum, the 2019 Addendum's terms "apply to all products and services AT&T provides [to] [Atos.]" *Id.* § 1.1.

As is relevant to the instant motion, Section 4.4 of the 2019 Addendum provides for AT&T's recovery of the costs associated with its efforts to collect on delinquent payments—

---

[4]   Section 1.1 also references several other documents that are not relevant to the instant motion including: Tariffs, Acceptable Use Policy; Service Guides; Guidebooks; and Price Lists. (Pressment Decl. Ex. C (2019 Addendum) § 1.1).

[5]   The MSA had already been amended and/or modified on several occasions as of the date the 2019 Addendum was signed (February 26-27, 2019). *See* ECF Nos. 171-8, 171-9, 203-2, 194-40.

6

including its reasonable attorney fees—stating, in relevant part: "Customer will reimburse AT&T for all costs associated with collecting undisputed overdue, *delinquent* or dishonored payments, *including reasonable attorneys' fees*."[6] *Id*. (emphasis added.)

### D.    AT&T's Legal Fees and Costs

In pursuing its claims, AT&T incurred a total of $4,392,015.59 in attorneys' fees and costs. The amount of fees and costs that AT&T has incurred is reasonable.  As the Court acknowledged in its Summary Judgment Order, "[t]he parties engaged in extensive discovery" in this action.  ECF No. 241 at 18.  Discovery took more than a year to complete.  In addition to exchanging numerous rounds of Initial Disclosures and Interrogatories, the Parties produced tens of thousands of documents.  (Pressment Decl. ¶ 6.c).  Tellingly, by the time the Court issued its Summary Judgment Order, there were 240 entries already filed on the docket.

For its part, mindful of the limited amount in dispute (less than $4 million, exclusive of interest),[7] AT&T sought to reduce the amount and costs of discovery where possible.  Among other things, AT&T elected to forego certain depositions—including the depositions of two Atos witnesses that it had originally noticed for deposition and the deposition of a third-party consultant that Atos hired in connection with its negotiation of one of the Pricing Schedules at issue (which AT&T agreed to handle by stipulation).  (Pressment Decl. ¶ 7).

AT&T also agreed to bring all but one of its current and former employees to either Dallas (where both Parties reside) or New York (the forum), paying for them to travel from Florida,

---

[6]    The original MSA signed in 2002 included a similar provision that required Atos to "reimburse AT&T for all costs (including reasonable attorney fees) associated with collecting delinquent or dishonored payments." (Pressment Decl. Ex. A § 2.3).  While the Parties signed an Addendum to the Master Agreement on the same day they signed the MSA which deleted the MSA provision that provided for Atos' reimbursement of attorneys' fees (Pressment Decl. Ex. B § 2.3), the 2019 Addendum reinserted the attorneys' fee provision back into the MSA. (*See* Pressment Decl., Ex. C §§ 1.1, 4.4.)

[7]    Under New York law, AT&T is entitled to 9% interest from the date of the breach which runs from the date when Atos failed to make payment when due—approximately four years ago.  CPLR § 5004.  Accordingly, AT&T is entitled to at least $1.2 million in interest on top of the balance of $3,367,51 owed for the shortfall for a total of more than $4.5 million in damages as of now.

Georgia, and Illinois. (ECF No. 121 at 3). The sole employee who did not travel is a retired grandfather who was unable to travel because he cares for his grandchildren. (*Id.*) AT&T also divided responsibility for the litigation among different BakerHostetler teams to reduce costs— enlisting discovery attorneys at lower rates, many of whom are based outside of New York, to handle most of AT&T's production and related discovery issues. (Pressment Decl. ¶ 18).

By contrast, throughout the course of this litigation, Atos employed tactics that greatly *increased* the costs, fees and duration of this litigation. Among other things:

- Atos moved to dismiss AT&T's Complaint (ECF No. 18), advancing a demonstrably false narrative that the erroneously drafted Shortfall Charge Provision was "intended to incentivize Atos to overperform during months 29-40 of the First Restated Pricing Schedule to earn a reward for an optional 1-year extension . . . ." ECF No. 18 n.7. As the Court acknowledged in its Summary Judgment Order, "there is no evidence— none—of anyone at any time ever discussing an *incentive* in the form of a free extension term." ECF No. 241 at 50-51. Atos' efforts to dismiss AT&T's complaint required AT&T to file a motion for leave to amend (ECF No. 66) and accompanying memoranda of law in support (ECF Nos. 67, 86), as well as an Amended Complaint (ECF No. 94);

- Atos also refused to adhere to any notion of proportionality with respect to discovery. Instead, Atos noticed the maximum number of depositions permitted by Federal Rule of Civil Procedure 30—including a 30(b)(6) deposition comprised of *three* 30(b)(6) witnesses noticed for a total of *twenty-eight* topics (Pressment Decl. ¶¶ 6.k; 6.l);

- Atos also unnecessarily added to the fees required to litigate this dispute by refusing to produce documents from two Atos employees identified in the Parties' Initial Disclosures. (*See* ECF No. 53 at 1-2). One of the individuals was Atos' CFO, Ashley Crandall, who signed the 2021 Amendment that was at the center of this litigation. *Id*.

Although AT&T sought to avoid motion practice by offering to withdraw its request for documents from the two witnesses if Atos agreed not to rely on their testimony without first producing their documents, Atos refused. (*Id*.) As a result, AT&T was forced to move to compel the production of documents from the witnesses. (*See id*.) The Court granted AT&T's motion. (ECF No. 61 at 20).

- Atos also improperly redacted documents under claims of privilege. (*See generally* ECF No. 87). Once again, AT&T sought to avoid the costs of motion practice, and once again Atos refused all offers of compromise, requiring AT&T to seek the Court's intervention. (*Id*.) After conducting an *in camera* review of the challenged documents, the Court held that 30% contained improper redactions and ordered Atos to produce unredacted documents. (ECF No. 93). Incredibly, Atos later sought to claw back one of the same documents that the Court had already ordered produced—an email from one of Atos' negotiators where she admitted that the provision at issue was a "mistake." (*See* ECF No. 194-86). Again, Atos refused all attempts to resolve this issue and AT&T was forced to move to compel Atos to do something it had already been ordered to do—produce an unredacted copy of the email. (ECF No. 116). The Court granted AT&T's motion. (ECF No. 126).

- Atos also pursued a baseless motion to compel as well as a motion for spoliation sanctions against AT&T. (*See generally* ECF Nos. 101-102, 139-142, 161-164). *First*, nearly four months *after* the close of fact discovery, Atos moved this Court to compel AT&T to produce documents from *four* additional custodians, seeking to nearly double the number of AT&T custodians. (*See* ECF No. 106 at 1). Atos claimed that documents in these custodians' files would somehow "demonstrate that not only was there no mutual mistake, but AT&T itself drafted the language intentionally without

9

even demonstrating unilateral mistake." (ECF No. 101 at 1). Once again, AT&T was forced to devote additional time and resources defending itself against Atos' claims via written filings (ECF No. 106) and oral argument (ECF No. 109). After holding oral argument on Atos' motion, the Court acknowledged that the documents of one of the custodians (Mr. Ritter) were not available (ECF No. 109 at 20) and denied Atos' request for all but one of the remaining additional custodians sought. (*Id*. at 27-28).

- At that same oral argument, Atos' counsel suggested that it might pursue spoliation sanctions against AT&T for failing to retain Mr. Ritter's data after the termination of his employment. (*Id*. at 36). The Court cautioned Atos that it was exploring issues of spoliation is "not always the most fruitful way to spend time as opposed to litigating the merits." (*Id*. at 36-37). Despite this admonition from the Court, Atos nevertheless proceeded with a motion for spoliation sanctions (ECF No. 139-142, 161-164), again forcing AT&T to spend time and resources in opposition (*see* ECF No. 152). Ultimately, the Court denied Atos' motion, holding that Atos had "failed to offer evidence, circumstantial or otherwise," that called into question AT&T's "perfectly credible and non-nefarious reason for the documents' deletion—normal document retention policies for employees who leave the company." (ECF No. 241 at 67-68).

- Atos' conduct with respect to depositions is perhaps the most obvious example of its efforts to drive up the costs of this litigation. Before depositions began, AT&T's counsel conferred with Atos' counsel to determine whether depositions could be avoided given Atos' production of an email written by the Atos executive who negotiated the Pricing Schedule at issue—Loek van Stekelenburg—in which he confirmed that the provision on which Atos was relying did not accurately reflect the Parties' agreement. (Pressment Decl. ¶ 8). Given the content of van Stekelenburg's

10

email, AT&T was prepared to move for summary judgment on the documentary evidence alone. (*Id.*; *see also* ECF No. 109 at 31). Atos' counsel insisted on proceeding with depositions. (Pressment Decl. ¶ 8).

- Moreover, despite the fact that AT&T only identified five witnesses as likely to have information on which it intended to rely (*see* ECF No. 121 at 3), Atos insisted on taking the deposition of *nine* individual fact witnesses, and *three* 30(b)(6) witnesses noticed for a total of nearly *thirty* topics.[8] (*Id.*) Atos also insisted that every single one of its witnesses be deposed in locations outside New York, including in Houston, Detroit, Washington D.C., Dallas, and Pittsburgh. (*Id.*)

- Most egregiously, Atos refused to produce van Stekelenburg—***its key witness***—for deposition in the United States, and, instead, moved this Court for a protective order seeking to force AT&T's counsel to travel to Amsterdam to take his deposition. (*See* ECF No. 118). In response, AT&T opposed the motion and moved to compel Atos to produce Stekelenburg for deposition in the United States, or, in the alternative, prohibit Stekelenburg from testifying in this case. (ECF No. 121). The Court granted AT&T's motion and ordered Atos to produce van Stekelenburg for his deposition in the United States. (ECF No. 123 at 8).

AT&T is well aware that the legal fees it incurred in pursuing its claims are significant. But given Atos' approach to litigating this dispute, those fees are both understandable and reasonable. As detailed in the Pressment Declaration, AT&T's lawyers from Baker & Hostetler, LLP ("BakerHostetler") offered AT&T substantially discounted hourly rates and additional discounts and credits totaling nearly $3.4 million in additional savings over the

---

[8]    In fact, Atos moved this Court for an order compelling AT&T to produce each 30(b)(6) witness separately for a 7-hour deposition, for a total of 21 hours of 30(b)(6) testimony. (ECF No. 122). AT&T was forced to incur additional expense in opposing the motion. (*See* ECF No. 125). The Court denied Atos' motion and held that Atos may depose AT&T's 30(b)(6) witnesses for up to seven hours in the aggregate. (ECF No. 129).

course of this litigation.  (Pressment Decl. ¶ 28).  AT&T is also not seeking certain additional costs paid to outside vendors associated with the collection and review of documents, or the fees paid for certain attorneys and legal support professionals who had limited involvement in the matter.  (*Id.* ¶¶ 21, 30, 32).  AT&T also had an interest in enforcing its contractual rights against Atos because AT&T is currently involved in another litigation against Atos arising from a separate contract for which AT&T claims it is owed in excess of $20 million in damages as a result of Atos' breach of that contract.  (*Id.* ¶ 33).

Thus, this Court should honor the Parties' contract by requiring Atos to "reimburse AT&T for all costs associated with collecting undisputed overdue, delinquent or dishonored payments"—such as the shortfall payment at issue in this action—"including [AT&T's] reasonable attorneys' fees."  (Pressment Decl. Ex. C (2019 Addendum) § 4.4).

## ARGUMENT

### I.   AT&T IS CONTRACTUALLY ENTITLED TO RECOVER ITS COSTS AND REASONABLE ATTORNEYS' FEES INCURRED IN THIS ACTION.

AT&T's motion arises from Section 4.4 of the 2019 Addendum, which provides that "[Atos] will reimburse AT&T for all costs associated with collecting undisputed overdue, delinquent or dishonored payments, including reasonable attorneys' fees."  (*See* Pressment Decl. Ex. C (2019 Addendum) § 4.4).  Here, AT&T's entire purpose in bringing the action was to recover a "delinquent" payment—the balance owed for the 2021 Amendment's MARC.  (*See generally* ECF No. 94).  The Summary Judgment Order provided AT&T with the relief sought by granting AT&T summary judgment—finding there were no issues of disputed material facts and that AT&T was entitled to a judgment as a matter of law—on its reformation claim.  (ECF No. 241).

"Where attorney's fees are provided for by a provision in a contract, such a provision is enforceable under New York law and courts 'will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable.'" *Major League Baseball*

12

*Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, No. 19 Civ. 8669 (MKV) (GWG), 2021 WL 56904, at *2 (S.D.N.Y. Jan. 7, 2021) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)); *KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 139-40 (S.D.N.Y. 2021).

Although awards of attorneys' fees typically fall within the court's discretion, "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *Matsumura v. Benihana Nat'l Corp.*, No. 06 Civ. 7609 (NRB), 2014 WL 1553638, at *3 (S.D.N.Y. Apr. 17, 2014) (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)).  Moreover, "[t]here is no general rule against one-way attorney's fees provisions.  Rather, a contract provision that one party to a contract pay the other party's attorneys' fees in the event of a breach is enforceable so long as those amounts are not unreasonable." *Keybanc Cap. Markets, Inc. v. Extreme Steel, Inc.*, 710 F. Supp. 3d 239, 247 (S.D.N.Y. 2024) (internal quotations omitted).

Under New York law, the intention to grant a party a contractual right to recover its reasonable attorneys' fees must be "unmistakably clear." *OVES Enter., SRL v. NOWwith Ventures, Inc.*, No. 24-cv-03581 (LJL), 2024 WL 4635399, at *6 (S.D.N.Y. Oct. 31, 2024) (citing *ATT Corp. v. Publ'g Concepts L.P.*, No. 08 Civ. 7658(DC), 2010 WL 1191380, at *5 (S.D.N.Y. Mar. 29, 2010)).  Here, the plain language of the 2019 Addendum to the MSA provides for the award of all costs associated with collecting overdue, delinquent, and/or dishonored payments, including, specifically, "reasonable attorneys' fees."  (*See* Pressment Decl. Ex. C (2019 Addendum) § 4.4).

The 2019 Addendum explicitly references the MSA and states that its terms "shall apply to all products and services AT&T provides [Atos] pursuant to this Agreement [] and shall continue in effect so long as Services are provided under this Agreement." *Id*. § 1.1.  The 2019 Addendum defines "Agreement" to include the MSA and Pricing Schedules between the Parties. *Id*. §§ 1.1, 1.1(a).  The 2019 Addendum also includes an Order of Priority provision establishing that the *only*

13

document superior to the 2019 Addendum is an applicable pricing schedule (to the extent it is inconsistent with the terms of the 2019 Addendum):[9]

> **1.2 Priority of Documents.** The order of priority of the documents that form this agreement is: the applicable Pricing Schedule; *the General Terms and Conditions*; the Master Agreement, the AUP; and Tariffs, Guidebooks, Service Guides, and Price Lists; provided that Tariffs will be first in priority in any jurisdiction where applicable law or regulation does not permit contract terms to take precedence over inconsistent Tariff terms.

*Id.* § 1.2.

The applicable Pricing Schedule here—the 2019 Restated Pricing Schedule—does not contain any terms that are inconsistent with, or serve to alter, nullify or override, the General Terms and Conditions set forth in the 2019 Addendum which was signed a month *after* the 2019 Restated Pricing Schedule and includes the attorneys' fee provision.[10]  Because there is no dispute that this litigation arose with respect to products and services provided pursuant to the Agreement (which includes the MSA and the 2019 Addendum) and the 2019 Restated Pricing Schedule as amended by the 2021 Amendment, and because the 2019 Addendum applies to "all products and services AT&T provides [to] [Atos]" such as those provided pursuant to the 2019 Pricing Schedule as amended, the 2019 Addendum's General Terms and Conditions govern here.

## II.    THE ATTORNEYS' FEES, COSTS, AND EXPENSES REQUESTED BY AT&T ARE REASONABLE.

The costs and attorneys' fees that AT&T incurred in pursuing this action are reasonable.

---

[9]    It is well-settled that a document superior to a subsequently signed document in terms of the order of priority shall only control over the subsequently signed document where it contains terms contrary to that document. *See, e.g.*, *Steele-Warrick v. Microgenics Corp.*, 738 F. Supp. 3d 222, 227 (E.D.N.Y. 2024) ("Where there is no conflict or inconsistency between provisions, 'there is no reason to resort to [the order-of-precedence clause] tiebreaker'") (quoting *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995)).  *See also Alessi Equipment, Inc. v. Am. Piledriving Equipment, Inc.*, 578 F. Supp. 3d 467, 502 (S.D.N.Y. 2022) ("New York law dictates that subsequent contracts regarding the same subject matter supersede the prior contract, even if there is no express termination, and even if the subsequent contract lacks an integration or merger clause.")

[10]    As noted above, the original MSA includes a nearly identical provision to Section 4.4 of the 2019 Addendum— requiring Atos to reimburse AT&T for the "for all costs (including reasonable attorney fees) associated with collecting delinquent or dishonored payments."  (*See* Pressment Decl. Ex. A § 2.3; Pressment Decl., Ex. C § 4.4.)

The fees BakerHostetler charged AT&T for its work on this matter are based on highly discounted rates that BakerHostetler offered to AT&T.  (Pressment Decl. ¶¶ 23-28).  Indeed, after the application of certain agreed upon discounts beyond the already discounted rates that BakerHostetler offered to AT&T for this matter, BakerHostetler charged AT&T average combined billing rates of: (1) $687.17 per hour for Partners; (2) $623.00 per hour for Of Counsel; (3) $525.00 per hour for associates; (4)  $252 per hour for discovery staff attorneys; and (5) $231.00 per hour for paralegal work. (*Id*.)  These rates are well below the hourly rates typically charged by attorneys at other *Am Law* top-100 firms like BakerHostetler (and by BakerHostetler itself). (*Id*. ¶ 25.)

As detailed in the Pressment Declaration, BakerHostetler also staffed the matter appropriately.  Most of the substantive work was done by two Partners: Jonathan Pressment and Christos Papapetrou.  (*Id*. ¶ 10).  They were primarily assisted by two associates: Jason Spiegel and Kamille Perry.  (*Id*.)  Other associates were utilized at the outset when the complaint was filed and for spot assignments such as cite checks (which BakerHostetler typically has completed by associates who did not participate in drafting the papers reviewed) and legal research.  (*Id*. ¶ 17).  Paper discovery was overseen by Edward Jacobs, who leads BakerHostetler' e-Discovery group, and staffed with discovery-focused staff attorneys—most of whom are based outside of New York and can handle complex discovery matters at lower rates.  (*Id*.)

BakerHostetler also provided multiple additional discounts as a courtesy to AT&T—both in recognition of its status as a longstanding BakerHostetler client and the fact that this was the first litigation handled for AT&T by Mr. Pressment and Mr. Papapetrou after they joined BakerHostetler in February 2023.  (*Id*. ¶ 23).  For example, Baker provided additional pre-billing discounts to AT&T in the amount of $1,304,719.13.  (*Id*. ¶ 28).  And BakerHostetler's already discounted hourly rates for this matter were further discounted by a 30% across the board discount to fees taken on the back-end after BakerHostetler issued its invoices to AT&T.  (*Id*. ¶¶ 26-28).

Over the life of the matter, this additional discount resulted in an additional $2,063,752.68 reduction in BakerHostetler's fees inclusive of $16,194.13 in discounts applied to invoices approved for payment in 2026. (*Id.* ¶ 28). In short, the fees requested by this motion were heavily discounted—at multiple levels—and designed to bring value to AT&T. (*Id.* ¶¶ 23-28). As such, they are reasonable and commensurate with the scope and complexity of this litigation.[11]

Even absent BakerHostetler's significant discounts, this Court has rightly identified that "the fact that a paying client was willing to pay and in fact paid a certain amount to litigate a case is strong evidence that the fee was reasonable." *Adstra, LLC v. Kinesso, LLC*, No. 24-cv-2639 (LJL), 2025 WL 1070034, at *6 (S.D.N.Y. Apr. 9, 2025) (citing *Lilly v. City of N.Y.*, 934 F.3d 222, 232-33 (2d Cir. 2019)); *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (citation and internal quotation marks omitted). The costs and fees requested reflect the amount incurred and that AT&T actually paid. (*See* Pressment Decl. ¶¶ 31-32).

In determining the reasonableness of attorneys' fees in the context of a contractual claim, a court also examines a variety of other factors, including "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved." *Adstra*, 2025 WL 1070034, at *6. As discussed below, each of these factors underscores the reasonableness of the fees requested by AT&T.

---

[11]    The Pressment Declaration provides detailed information regarding the services provided and the breakdown of all fees and expenses, as required under New York law. As this Court held in *Adstra*, "[a] fee request need only be supported by "a proper and sufficient affidavit of services." 2025 WL 1070034 at *6 (internal citation omitted). The Pressment Declaration satisfies that requirement. To the extent the Court would find it helpful to review the three-years of monthly invoice records, AT&T is prepared to make that submission *in camera*, or in whatever form the Court requires. At this stage, due to the voluminous nature of the records and the need to redact for potential privileged information, AT&T has not submitted the invoices as exhibits.

**A.**     **The Hourly Rates Requested are Reasonable, and Reflect the Experience, Ability, and Reputation of the Attorneys Used, and Fall Within the <u>Customary Fees Charged.</u>**

The Court should find that the hourly rates charged by BakerHostetler in this litigation are reasonable because they are aligned with rates charged in this District by comparably-sized firms using similarly experienced attorneys.  AT&T seeks reimbursement for fees incurred as a result of work conducted by its attorneys, Jonathan Pressment, Christos Papapetrou, Edward Jacobs, Nicholas Rose, Jason Spiegel, and Kamille Perry, along with Baker's discovery attorneys, paralegals, and clerical support staff.  The hourly rates for each of the attorneys who worked on the matter were deeply discounted—in many cases by hundreds of dollars per hour—from their standard rates.  (Pressment Decl. ¶¶ 23-28).

1.     **Baker's Rates were Reasonable in Light of its Attorneys' Strong Reputation and Experience in Commercial Litigation Matters.**

AT&T is represented by Baker & Hostetler, LLP, which is one of the largest law firms in the United States with over 1,000 attorneys across 18 offices. (Pressment Decl. ¶ 5). BakerHostetler is ranked 59th in the 2026 AmLaw 100 listing. (*Id*.)  The Firm's attorneys handle matters in a wide variety of areas including Business, Digital Assets and Data Management, Intellectual Property, Labor & Employment, Litigation, and Tax. (*Id*.)

The core group of attorneys who represented AT&T in this litigation consists of talented litigators with a wealth of experience in complex commercial disputes.  Mr. Pressment, the lead Partner on this matter, is the Litigation Practice Group Leader for BakerHostetler's New York office, and the national Chair of the Firm's Commercial Litigation Group.  (*Id*. ¶ 11). Christos Papapetrou, another Partner who co-led work this matter, is Deputy Chair of BakerHostetler's firmwide Litigation Practice Group.  (*Id*. ¶ 12). Partner Edward Jacobs is Co-Leader of BakerHostetler's firmwide eDiscovery, Advocacy, and Management team. (*Id*. ¶ 13).

In short, AT&T's counsel from BakerHostetler are experienced, accomplished, and skilled

17

commercial litigators. The discounted rates charged to AT&T on this matter were undoubtedly reasonable given their qualifications and the work undertaken in connection with their representation of AT&T in this action.

2. **BakerHostetler's Rates are Competitive with Similarly Sized New York Law Firms and Comparable to Rates Previously Deemed Reasonable by Courts in This District When Awarding Attorneys' Fees.**

As this Court notes: "Courts in this District have recognized that an attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of the market rate." *Adstra*, 2025 WL 1070034, at *7; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010) ("[A] reasonable hourly rate is the rate a paying client would be willing to pay.") (internal citations omitted). The relevant community to determine the rates to look to should be those in the "district in which the reviewing court sits." *See Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). The rates paid by AT&T in connection with this action compare favorably with the prevailing market rates in this District and, given the unique considerations of the case detailed herein (both in terms of the amount in dispute and it status as the first litigation handled for AT&T by the lead Partners upon joining BakerHostetler), are below those regularly charged to and paid by BakerHostetler's other clients—reflecting substantial discounts to BakerHostetler's standard rates for work of this sort. (Pressment Decl. ¶¶ 23-28).

In addition, this Court can also look to awards of reasonable attorneys' fees made by courts in this District, which further support the reasonableness of the rates sought here. For example, this Court has previously found rates comparable to—*and higher than*—those BakerHostetler charged AT&T for this matter to be reasonable for lawyers working on complex matters. *See Adstra*, 2025 WL 1070034, at *7 (finding associate billing rates of $554, $569, and $883 per hour, and a partner's billing rate of $1,421 per hour, for a combined average billing rate of $843 per hour

reasonable).  Moreover, Judge Woods recently held that hourly rates charged by many of the same BakerHostetler attorneys who worked on this matter were reasonable in similar circumstances and awarded fees accordingly.  *See Mircal v. Flacks*, No. 1:25-cv-622-GHW, 2025 WL 3560376, at *3-4 (S.D.N.Y. Dec. 11, 2025) (Woods, *J.*) (holding that the discounted fees charged by Mr. Pressment, Mr. Papapetrou, and Ms. Perry were "consistent with market rates in New York for sophisticated commercial litigation practices" and thus reasonable).

Other courts in this District have similarly found comparable rates to be reasonable.  *See StoneX Grp., Inc. v. Shipman*, No. 23-CV-00613 (JGK) (VF), 2025 WL 1212165, at *3 (S.D.N.Y. Apr. 25, 2025) (finding requested reduced partner rates of $1,285 per hour (down from $1,560 per hour) and $800 per hour (down from $1,345 per hour) and associate rates of $784.90 per hour and $800 per hour for senior associates reasonable when compared to similar complex commercial cases); *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA) (RWL), 2025 WL 1183676, at *7-9 (S.D.N.Y. Apr. 4, 2025), *R. & R. adopted*, 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025) (approving partner rates of $1,195 and $995 per hour); *Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*, No. 23-CV-603 (PGG) (RWL), 2023 WL 8591953, at *6-9 (S.D.N.Y. Oct. 16, 2023), *R. & R. adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (approving hourly rates up to $1,400 per hour for a partner and nearly $1,000 per hour for associates); *Phyto Tech Corp. v. Givaudan SA*, No. 18-cv-6172 (JGK), 2023 WL 1437714, at *7 (S.D.N.Y. Jan. 31, 2023) (deeming reasonable the average discount rates of partners ranging from $897.50 to $1,079.97 per hour and for three associates ranging from $465.97 to $723.39 per hour); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 Misc. 23, 2021 WL 1353756, at *3 (S.D.N.Y. Apr. 12, 2021) (awarding rates of $1,175 and $1,350 per hour for partners and $650 and $625 per hour for associates at a large law firm); *Red Tree Invs., LLC v. Petroleos De Venezuela, S.A.*, Nos. 19-CV-02519, 19-CV-02523 (PKC) (SN), 2022 WL 17834945, at *7

19

(S.D.N.Y. Nov. 29, 2022), *R. & R. adopted*, 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023) (approving an hourly rate of $1,600 for a senior partner, noting that fees paid by a sophisticated client are entitled to the presumption of reasonableness because one client may be willing to pay more than another client); *see also id.* Docket 151-7 at ECF 17 (identifying $1,600 hourly rate for most senior partner).

In short, the fees AT&T seeks are in line with the rates that this Court and other courts within this District have held to be reasonable for law firms of comparable size and expertise.

**B.** **The Hours Spent by BakerHostetler Are Reasonable Under the Circumstances.**

The hours BakerHostetler billed are also reasonable based on the duration, scope, intensity and complexity of this litigation.  To determine whether the hours billed are reasonable, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998).  The relevant inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Kim v. Superior Cafe Corp.*, No. 21-cv-3620 (GBD) (RWL), 2021 WL 5315704, at *10 (S.D.N.Y. Oct. 7, 2021).

This litigation involved substantial motion practice; voluminous and robust document discovery; numerous discovery disputes requiring judicial intervention; multiple Court appearances; twenty depositions, including three 30(b)(6) depositions, many of which required interstate travel; and cross-motions for summary judgment, which involved coordinating with Atos' counsel to prepare a joint 56.1 statement, the preparation and/or review of over 350 exhibits (many containing redacted and sealed information), and multiple oral arguments.  (Pressment Decl.

¶ 6).  Under these circumstances, the 10,387.20 hours spent litigating this matter over the course of more than three years are reasonable.  Moreover, AT&T's expenses are particularly reasonable in light of Atos' overly aggressive and wasteful litigation tactics, to which AT&T was forced to respond.  *See Fleming v. MaxMara USA, Inc.*, No. 06-CV-6357 (CBA) (JMA), 2010 WL 1629705, at *7 n. 10 (E.D.N.Y. Apr. 21, 2010) (holding that where a party "increased the cost of the litigation through delay, obstructionism and duplicative and excessive motion practice," "such tactics [are] undoubtably [] relevant to consideration of the amount of any fee award.").

As the Court noted in its opinion granting AT&T's summary judgment motion, Atos should have "negotiated for a different arrangement if it was unwilling to abide by the parties' previous agreement."  (ECF No. 241 at 47).  Instead, Atos insisted on burdening AT&T and this Court with protracted litigation based on claims in defense that lacked any support.  Atos should be ordered to comply with its contractual obligation to reimburse AT&T for all reasonable attorneys' fees and costs incurred in collecting payment for an invoice Atos knew it had no legal grounds to dispute.

## CONCLUSION

For the foregoing reasons, AT&T respectfully requests that this Court order Atos to pay AT&T's costs and its reasonable attorneys' fees in the amount of $4,237,728.39 and expenses in the amount of $154,287.20, for a total reimbursement of $4,392,015.59.

21

Dated:    May 6, 2026                                  Respectfully submitted,
          New York, New York

                                                       BAKER & HOSTETLER, LLP


                                                  By:  */s/ Jonathan D. Pressment*
                                                       Jonathan D. Pressment
                                                       Christos G. Papapetrou
                                                       45 Rockefeller Plaza
                                                       New York, New York 10111
                                                       Telephone:  212-589-4200
                                                       Facsimile:  212-589-4201
                                                       jpressment@bakerlaw.com
                                                       cpapapetrou@bakerlaw.com

                                                       *Attorneys for Plaintiff AT&T Enterprises,*
                                                       *LLC*

## CERTIFICATION OF WORD COUNT

I hereby certify that the following document complies with the word count limits set forth in Rule 7.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block is 7,153 words.

Dated: May 6, 2026
     New York, New York

**BAKER & HOSTETLER, LLP**

By:  */s/ Jonathan D. Pressment*
Jonathan D. Pressment
Christos G. Papapetrou
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212-589-4200
Facsimile:  212-589-4201
jpressment@bakerlaw.com
cpapapetrou@bakerlaw.com

*Attorneys for Plaintiff AT&T Enterprises, LLC*

23